**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**LISA A. WUERTH,**

      **Plaintiff,**

**v.**                                                                             **Case No.  8:06-cv-1353-T-30TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States
Social Security Administration,**

      **Defendant.**
                                                   /

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[2]  Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded.

I.

Plaintiff was forty years of age at the time of her administrative hearing in July 2005. Administrative filings indicate that she stands 5', 6½" tall and weighed 138 pounds.  Plaintiff

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987.  *See also* M.D. Fla. R. 6.01(c)(21).

has a twelfth grade education with about one year of college. Her past relevant work was as a medical transcriptionist and typist. Plaintiff applied for disability benefits in August 2003, alleging disability as of November 21, 2002, by reason of chronic fatigue, fibromyalgia, depression with major depressive episodes, panic disorder, mood swings, shoulder pain, and mitral valve prolapse. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff claimed that she could no longer work at any job due to a combination of impairments which limited her physically and mentally. She had worked as a self-employed medical transcriptionist for ten years but had to quit when she could no longer handle the physical demands for sitting and repetitive foot movement and meet the production demands of the job. By Plaintiff's account, her condition rendered her in constant whole body pain. The pain is especially bad in her temples, jaws, hips, calves, shoulder blades, and the back of her neck. On a typical day the pain would be at a level five or six on a scale of one to ten with ten being the highest degree of pain. When she is active, her pain reaches a level ten. She uses a heating pad on a daily basis for her pain. Plaintiff also suffers from shortness of breath which she attributes to her mitral valve prolapse. She sees doctors at least once a month for her conditions.

In addition to physical problems, Plaintiff suffers from depression and panic disorders. She claims that her depression keeps her in the house most of the time and causes her to sleep a lot. There are days when she does not care to do anything. By her account, she

suffers panic attacks once every couple of weeks and she is afraid of leaving her house. By her account, she was involuntarily committed under Florida's Baker Act in 2003 when she threatened suicide. Plaintiff sees a psychiatrist on a monthly basis. In addition to her depression and panic attacks, she also claims to suffer from bipolar disorder. She claims that the medications she is prescribed make her sleepy and do not help much. She believes the Lithium affects her ability to concentrate and focus.

Plaintiff estimated that she can sit for no more than twenty minutes and has to constantly shift her position. She believes she can stand for about twenty minutes and walk for about fifteen minutes before she needs to rest. By her account, lifting a gallon of milk is a problem. Plaintiff can lift her arms over her head and she can pick up small items. Plaintiff can drive but does so only for short distances because she cannot sit for too long without pain. She drives herself to the store about twice a week. According to Plaintiff, she can care for her personal needs such as bathing and her hair without help. She does not do much housework such as cooking, cleaning, and vacuuming, and she does no yard work. She no longer reads much because she cannot concentrate or focus. She does not watch television or socialize much. She will run simple errands, eat, and occasionally sit out on the porch for fresh air. By her account, her inability to maintain an active daily regimen contributed to her divorce. She does not sleep well at night. Plaintiff claims to sleep most of the day and she must take naps of up to three hours. Plaintiff no longer travels on archaeological trips as she once enjoyed doing; nor does she dig for fossils locally. *See* (R. 411-429).

The VE next took testimony from Gerald Wili, a vocational expert ("VE"). The VE was asked first to assume an individual of Plaintiff's age, education, and work history capable

3

of the exertional demands of medium work with occasional problems in maintaining attention and concentration. On this hypothetical, the VE opined that such a person could perform Plaintiff's past work.[3] On a second hypothetical which assumed the same limitations but capable of only light exertional work, the VE again opined that such person could do Plaintiff's past work as she performed it. On a third hypothetical which incorporated the limitations of the second hypothetical with the additional limitation of only occasional contact with supervisors, co-workers, and the public, the VE again opined that such person could do Plaintiff's past work. On a fourth hypothetical which assumed all the limitations in the third hypothetical plus an additional assumption that such person was unable to complete an eight-hour day or a forty-hour work week, the VE opined that such person would be unable to do Plaintiff's past relevant work or any other work available in the economy.

On questioning from Plaintiff's counsel, if such person had "frequent" lapses in ability to focus and concentrate, with frequent meaning two-thirds out of an eight-hour day, such individual would be unable to do any work. On a further assumption that such individual would need to nap two or three times a day for an hour, such individual would be unable to do any work. If such person was capable of working twenty minutes with a sit/stand option but then required a rest period elevating her feet or lying down for an equal or greater period before resuming work, she could not find employment through others but could perform the work as Plaintiff did at home. If the person could only work a total of two hours in a work day, she would be unable to perform any competitive work. (R. 430-434).

---

[3] In an administrative filing, the VE identified Plaintiff's past work as a medical transcriptionist as semi-skilled sedentary work. (R. 172).

Also before the ALJ were medical records outlining the Plaintiff's medical history.

By his decision of December 23, 2005, the ALJ determined that while Plaintiff has severe impairments related to fibromyalgia and depression, she nonetheless had the residual functional capacity to perform light exertional work with a sit/stand option at will and occasional limitations for maintaining attention and concentration and contact with supervisors and the public. Upon this finding, and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a medical transcriber. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 20-23). The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler,* 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises five claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) The Administrative Law Judge failed to consider the combined effects of all impairments;

(2) The Administrative Law Judge erred in evaluating the Claimant's subjective complaints as her credibility finding is not based on substantial evidence;

(3) The substantial evidence of the record does not support a finding that the Claimant can perform sustained work activities;

(4) The Administrative Law Judge erred in providing no specific findings or analysis regarding the mental demands of the Claimant's past work, as required by SSR 82-62; and

(5) Since the testimony of the Vocational Expert supports a finding that there is no work in the national economy upon a proper consideration of all of the Claimant's limitations, the Appeals Council should award benefits.

Plaintiff's first and second claims tend to merge into one.  By her first claim, Plaintiff urges that the ALJ failed to comply with the applicable standard which dictates that he must consider all of claimant's impairments individually and in combination and state the weight given to such evidence.  She urges that while the ALJ found her to suffer severe impairments which could account for her symptoms, he failed to consider the combined effects of her chronic fatigue, fibromyalgia, right shoulder pain, and her well documented mental impairments, urging that she was rendered incapable of all work by reason of these conditions.  Plaintiff also complains that non-severe impairments, such as her basal cell

7

carcinomas, should have been included in the evaluation and any hypothetical to the VE.[4] In both her first and second claim, Plaintiff raises the spectre of her subjective complaints. She cites to this circuit's "pain standard" and urges that her "pain" complaints (*e.g.* fatigue, pain, poor concentration and focus etc.) should have been considered in combination with her other impairments and further that the ALJ gave wholly inadequate reasons for finding her subjective complaints to be less than fully credible.[5] By her argument, such reasons as were given were not supported by and in fact were contradicted by the medical evidence.[6] She urges that a remand is appropriate. (Doc. 16 at 4-8).

In response, the Commissioner notes that the ALJ found Plaintiff capable of performing her past work as a medical transcriber and argues that the burden to prove that she could not return to such work was on the Plaintiff and she failed to meet that burden. He urges that the ALJ examined the objective medical evidence and her subjective complaints and concluded in conjunction with the VE testimony that she could perform such work. By the argument, the decision reflects that the ALJ considered Plaintiff's impairments in combination and as a whole, and in this case, any omission of an impairment was of no

---

[4]Plaintiff also includes a strange complaint that the ALJ should have considered her combination of impairments on her ability to perform her past work as an assembly line worker. (Doc 16 at 6). I can find no claim for such past relevant work for this claimant.

[5]In particular, she urges the ALJ's statement that "[d]espite all of these problems, she sees a doctor only once a month" is "a weak and inappropriate attempt to disprove disability." (Doc. 16 at 8).

[6]Plaintiff cites to no specific medical findings to support this assertion, but does cite generally to exhibits 17F, 20F and 21F for her back pain, exhibits 13F, 15F, 17F and 21F for her fibromyalgia, exhibits 6F, 15F and 13F for her chronic fatigue, and exhibits 9F, 10F, 11F, 13F, 15F, and 17F in support of her mental impairments.

practical effect absent some showing that the impairment imposed functional limitations. He argues further that the appropriate standard was properly applied to Plaintiff's pain complaints and that the medical record simply failed to support the complaints of disabling pain. (Doc. 19 at 4-10).

The Act and pertinent case law require that the ALJ consider each impairment, including complaints of pain, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). In *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. *Id.* at 635; *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

Subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he

must articulate explicit and adequate reasons for his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

Upon careful review of the decision and record, I find a remand is warranted because it is not possible to ascertain whether the ALJ considered each of Plaintiff's impairments. Here, Plaintiff alleged disability by reason of chronic fatigue, fibromyalgia, depression, panic disorder, mood swings/bipolar disorder, shoulder pain, and mitro valve prolapse. (R. 67). These were also the same impairments of which Plaintiff complained at the administrative hearing. (R. 416-17). The ALJ clearly considered her fibromyalgia[7] and depression[8] because he found that those impairments constituted severe impairments under the Act. (R. 20). He also considered the basal cell carcinoma that Plaintiff had on her shoulder and nose but

---

[7]"Fibromyalgia is a clinical syndrome defined by chronic widespread muscular pain, fatigue and tenderness. . . . Pain and tenderness are the defining characteristics of fibromyalgia . . .  There are no laboratory or other diagnostic tests for fibromyalgia so it must be diagnosed based on patient symptoms." American College of Rheumatology, http://www.rheumatology.org/public/factsheets/fibromya_new.asp? (last visited Feb. 15, 2008).

[8]Plaintiff was diagnosed with major depressive disorder, severe, recurrent. (R.227). "Major depression is when five or more symptoms of depression are present for at least 2 weeks.  These symptoms include feeling sad, hopeless, worthless, or pessimistic.  In addition, people with major depression often have behavior changes, such as new eating and sleeping patterns.  Major depression increases a person's risk of suicide." http://www.nlm.nih.gov/medlineplus/ency/article/000945.html. (last visited Feb. 15, 2008). "Major depression is a serious medical illness affecting 15 million American adults, or approximately 5 to 8 percent of the adult population in a given year.  Unlike normal emotional experiences of sadness, loss, or passing mood states, major depression is persistent and can significantly interfere with an individuals thoughts, behavior, mood, activity, and physical health.  Among all medical illnesses, major depression is the leading cause of disability in the U.S. and many other developed countries." http://www.nami.org/Template.cfm?Section=By_Illness&template=/ContentManagement/ContentDisplay.cfm&ContentID=77255. (last visited Feb. 15, 2008).

determined that they were not severe impairments because each was successfully excised and did not require subsequent treatment. (R. 21). However, it is not possible to ascertain whether the ALJ appropriately considered Plaintiff's alleged chronic fatigue syndrome,[9] mood disorder/bipolar disorder,[10] anxiety/panic disorder,[11] and mitral valve prolapse.[12] Although the ALJ acknowledged Plaintiff's testimony that she suffered these impairments (R. 21-22), his review of the medical record includes no discussion of these impairments. Regarding the claimed mental impairments, the ALJ noted that the records documented Plaintiff's "intermittent" treatment for mental health problems, which were "generally diagnosed as

---

[9]Chronic fatigue syndrome "is a disorder that causes extreme fatigue. This fatigue is not the kind of tired feeling that goes away after you rest. Instead, it lasts a long time and limits your ability to do ordinary daily activities. Symptoms of CFS include fatigue for 6 months or more and experiencing other problems such as muscle pain, memory problems, headaches, pain in multiple joints, sleep problems, sore throat and tender lymph nodes." http://www.nlm.nih.gov/medlineplus/chronicfatiguesyndrome.html. (last visited Feb. 15, 2008).

[10]Bipolar disorder "is a brain disorder that causes unusual shifts in a person's mood, energy, and ability to function. Different from the normal ups and downs that everyone goes through, the symptoms of bipolar disorder are severe. They can result in damaged relationships, poor job or school performance, and even suicide." http://www.nimh.nih.gov/health/publications/bipolar-disorder/complete-publications.shtml. (last visited Feb. 15, 2008).

[11]A "panic disorder is an anxiety disorder and is characterized by unexpected and repeated episodes of intense fear accompanied by physical symptoms that may include chest pain, heart palpitations, shortness of breath, dizziness, or abdominal distress." http://www.nimh.nih.gov/health/topics/panic-disorder/index.shtml. (last visited Feb. 15, 2008).

[12]"Mitral valve prolapse is a heart problem in which the valve that separates the left upper and lower chambers of the heart does not open and close properly." http://www.nlm.nih.gov/medlineplus/ency/article/000180.htm. (last visited Feb. 15, 2008). Symptoms include palpitations, chest chest pain, difficulty breathing after activity, fatigue, cough, and shortness of breath. Typically there are few or no symptoms. *See id.*

11

depression." (R. 21). Despite citing to mental health treatment records (by exhibit numbers) which reflect diagnoses, symptoms, and treatment for a mood disorder, bipolar disorder, anxiety, and panic attacks (R. 21), the ALJ fails to discuss these impairments in any meaningful manner.[13] Further, the ALJ's failure to address these impairments is not insignificant given the Plaintiff's subjective complaints of lack of concentration and inability to focus, difficulty leaving the house, panic attacks, suicidal thoughts, and side effects from psychotropic medication.[14] The ALJ also failed to address Plaintiff's claimed chronic fatigue syndrome and mitral valve prolapse. By Plaintiff's testimony, these impairments (alone and/or in combination with others) effect her functioning because she must take daily naps and suffers shortness of breath (which Plaintiff attributes to mitral valve prolapse). Although the medical evidence of these impairments is slight to none, the ALJ was obligated to discuss them. In sum, the ALJ erred by not addressing each impairment alleged by Plaintiff, and his failure to do so mandates reversal. *See Gibson*, 779 F.2d at 622-23; *see also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Because the ALJ did not adequately address each of Plaintiff's claimed impairments, he obviously did not consider the combined effect of such. To the extent that the

---

[13] Additionally, the ALJ's one paragraph recitation of the mental health evidence of record (R. 21) focuses on one aspect of the evidence (i.e., depression) while ignoring or disregarding the evidence of additional mental impairments. To do so is improper. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Further, the ALJ's recitation of the mental health evidence of record appears to be an attempt to minimize Plaintiff's claimed mental impairments. *See* (R. 21).

[14] For her mental impairments, Plaintiff is prescribed Depakote, Paxil, Klonopin, and Wellbutrin. (R. 284, 289, 319).

12

Commissioner suggests otherwise, the ALJ's decision refutes the suggestion. The fact that the ALJ found that Plaintiff did not "have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P" (R. 22), fails to demonstrate that he considered Plaintiff's impairments in combination under the circumstances that exist here.

As for Plaintiff's complaint that the ALJ did not adequately discount her subjective allegations, I agree. (R. 21). However, given the conclusion above on the ALJ's consideration of Plaintiff's impairments, it is not necessary to reach this issue since the ALJ's consideration of such may likely change on remand. In any event, I note that the decision reflects that the ALJ was aware of the governing standard and applied it in this case. Thus, the ALJ found that Plaintiff had "impairments that could reasonably be expected to produce some of the symptoms she alleges, but the degree of limitation she alleges is not supported by the objective medical evidence and is not entirely credible when evaluated under Social Security Ruling 96-7p."[15] (R. 21). However, while the ALJ recounted Plaintiff's subjective complaints, his reasons for determining that her allegations were not as severe as alleged are weak. Essentially, the ALJ discounted Plaintiff's testimony of disabling limitations simply on the basis of the evidence. *See* (R. 22). Given the ALJ's terse and incomplete discussion of the medical evidence, that reason is inadequate and fails to reveal the ALJ's reasoning. To the extent that the ALJ rejected Plaintiff's testimony because she only sees a doctor once a

---

[15] SSR 96-7p clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. § 404.1529 requires a finding about the credibility of a claimant's statements about pain or other symptoms and its functional effects. *See* SSR 96-7p, 1996 WL 374186, * 1 (S.S.A. ).

13

month (R. 22), that reason is also insufficient.  Accordingly, on remand the ALJ should be advised to provide adequate reasons for discounting Plaintiff's subjective complaints should he choose to do so. [16]

The court need not address Plaintiff's remaining arguments.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).  Once again, however, in order to avoid future problems on remand, the ALJ should be advised to explain the basis for his determination of Plaintiff's residual functional capacity and the medical evidence relied upon.  The ALJ should also address with specificity whether Plaintiff retains the capacity to perform regular and continuing employment, i.e., eight hours a day, five days a week.  On the instant appeal, the bases for the ALJ's determinations are not clear.

---

[16]On remand, should the ALJ discount Plaintiff's fibromyalgia related symptoms on the ground of the lack of objective evidence and clinical findings, he should be cautioned that doing so may be improper without more.  *See Stewart v. Apfel,* 245 F.3d 793, 2000 U.S. App. Lexis 33214, *7-10 (11th Cir. Dec. 20, 2000) (noting that fibromyalgia often lacks medical or laboratory signs; indeed, its hallmark is a lack of objective evidence); *Green-Younger v. Barnhart*, 335 F.3d 99, 107-09 (2nd Cir. 2003) (providing that a doctor's opinion regarding functional limitations is not undermined by reliance on the plaintiff's subjective complaints when the plaintiff suffers from fibromyalgia, and noting that, "in stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results  a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions"); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting that "fibromyalgia is diagnosed entirely on the basis of patients' reports of pain and other symptoms," its cause is unknown, there is no cure, and it is poorly understood within much of the medical community); *see also Harrison's Principles of Internal Medicine*, 1706-07 (Kurt J. Isselbacher et al., eds., 13th ed. 1994) (reporting that, with fibromyalgia, joint and muscle examination typically is normal).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
20th day of February 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James S. Moody, Jr., United States District Judge
Counsel of Record